UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In re:                                            :    Chapter 11
                                                  :
BAYOU GROUP, LLC, et al.,                         :    Case No.: 06-22306 (RDD)
                                                  :
                            Debtors.              :    Jointly Administered
------------------------------------------------------------- X

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE DEBTORS' SECOND AMENDED JOINT PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS, Bayou Group, LLC ("**Bayou Group**"); Bayou Management, LLC

("**Bayou Management**"); Bayou Advisors, LLC ("**Bayou Advisors**"); Bayou Equities, LLC

("**Bayou Equities**" and, together with Bayou Group, Bayou Management, and Bayou Advisors,

the "**Bayou Non-Fund Debtors**"); Bayou Superfund, LLC ("**Bayou Superfund**"); Bayou No

Leverage Fund, LLC ("**Bayou No Leverage**"); Bayou Affiliates, LLC ("**Bayou Affiliates**");

Bayou Accredited Fund, LLC ("**Bayou Accredited**"); Bayou Fund, LLC ("**Bayou Fund**" and,

together with Bayou Superfund, Bayou No Leverage, Bayou Affiliates, and Bayou Accredited,

the "**Bayou Hedge Funds**" and, together with the Bayou Non-Fund Debtors, the "**Debtors**")

filed the Debtors' Revised Third Amended Disclosure Statement with Respect to Second

Amended Joint Chapter 11 Plan of Bayou Group LLC, Bayou Management, LLC, Bayou

Superfund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou

Accredited Fund, LLC, Bayou Fund, LLC, Bayou Advisors, LLC, and Bayou Equities, LLC (the

"**Disclosure Statement**"), dated November 3, 2009 [Docket No. 1117] , and the Second

Amended Joint Plan under Chapter 11 of the Bankruptcy Code, dated November 3, 2009 [Docket


Respondent Exhibit
45

No. 1118],[1] as amended by certain immaterial corrections and incorporated into a version dated

December 16, 2009 [Docket No. 1137] and attached hereto as Exhibit A (the "**Plan**"); and

WHEREAS, following the hearing to approve the Disclosure Statement held on

October 29, 2009 (the "**Disclosure Statement Hearing**"), the Court entered an Order Approving

(i) Disclosure Statement, (ii) Form and Manner of Notices, (iii) Form of Ballots and

(iv) Solicitation Materials and Solicitation Procedures (the "**Approval Order**") [Docket No.

1119]; and

WHEREAS, the Debtors caused the Disclosure Statement and the appropriate

form of Ballot (the Disclosure Statement, the Plan, and the Ballot, collectively, the "**Solicitation**

**Materials**") to be distributed to the Holders of the following Claims to solicit votes to accept or

reject the Plan: (i) with respect to the Bayou Hedge Funds, Class 2 and Class 3, and (ii) with

respect to the Bayou Non-Fund Debtors, Class 2 and Class 3 (collectively, the "**Holders of**

**Impaired Claims**") and distributed to Class 4 of the Bayou Hedge Funds and Class 4 of the

Bayou Non-Fund Debtors Notices of Non-Voting Status; and

WHEREAS, the Court established December 21, 2009, at 10:00 a.m. (Eastern

Time) as the date and time of the hearing pursuant to section 1129 of the Bankruptcy Code to

consider Confirmation of the Plan (the "**Confirmation Hearing**"); and

WHEREAS, affidavits of service have been executed by and filed with the Court

(the "**Affidavits of Service**"), with respect to the mailing of notices of the Confirmation Hearing

and the Solicitation Materials in respect of the Plan in accordance with the Approval Order; and

---

[1]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such
terms in the Plan.  Any term used in the Plan or this Confirmation Order that is not defined in the Plan or
this Confirmation Order (defined below), but that is used in the Bankruptcy Code or the Bankruptcy Rules,
shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

WHEREAS, the Debtors filed with the Court the Notice of Filing of Schedule IC-1 to Debtors' Plan [Docket No. 1120] on November 13, 2009, and the Plan Supplement, dated December 4, 2009 [Docket No. 1127]; and

WHEREAS, Freestone Low Volatility Partners, LP filed its Motion Pursuant to Rule 3018(a) Requesting Temporary Allowance of Claim for Purposes of Objecting to and Voting On the Second Amended Joint Chapter 11 Plan [Docket No. 1131] (the "**3018 Motion**"); and

WHEREAS, objections to Confirmation of the Plan were filed and served by (i) Freestone Low Volatility Partners, L.P. [Docket No. 1132] (the "**Freestone Objection**") and (ii) Altegris Investments, Inc. [Docket No. 1134] (the "**Altegris Objection**" and, with the Freestone Objection, the "**Objections**"); and

WHEREAS, the Debtors filed with the Court the Notice of Filing of Non-Material Amendments to Debtors' Second Amended Joint Plan Under Chapter 11 of the Bankruptcy Code on December 16, 2009 [Docket No. 1137]; and

WHEREAS, the Debtors filed the Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes On and Results of Voting With Respect to the Plan (the "**Voting Certification**") on December 16, 2009 [Docket No. 1138]; and

WHEREAS, the Debtors filed, the Declaration of Jeff J. Marwil in Support of Confirmation of the Second Amended Joint Chapter 11 Plan (the "**Confirmation Declaration**") on December 17, 2009 [Docket No. 1141]; and

WHEREAS, the Debtors filed the Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "**Memorandum**") on December 17, 2009 [Docket No. 1142], the Creditors Committee filed an objection to the Freestone Objection and the 3018 Motion, and the Debtors filed an objection to the 3018 Motion; and

WHEREAS, the Confirmation Hearing was held on December 21, 2009, commencing at 10:00 a.m. (Eastern Time); and

WHEREAS, based upon the legal authority set forth in the Memorandum and other responses and the record of the Confirmation Hearing, including the Court's bench rulings, (i) the Altegris Objection has been resolved as set forth in decretal paragraph 4 below, (ii) Freestone Low Volatility Partners, LP is denied standing to object to the Plan and (iii) the Freestone Objection is overruled on the merits pursuant to this order (the "**Confirmation Order**").

NOW, THEREFORE, the Court having reviewed the Plan, the Disclosure Statement, the Approval Order, the Voting Certifications, the Affidavits of Service, the Objections, the Memorandum and the other papers before the Court in connection with the confirmation of the Plan; the Court having heard the statements of counsel in support of Confirmation at the Confirmation Hearing, as reflected in the record at the Confirmation Hearing; and the Court having considered all testimony presented and evidence admitted at the Confirmation Hearing and the representations by the parties on the record with respect to certain settlements, clarifications and non-material modifications of the Plan; the Court having taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; and the Court

finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation were adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Approval Order, as to all parties affected by the Plan and the transactions contemplated thereby, and (ii) the legal and factual bases set forth at the Confirmation Hearing and as set forth in this Confirmation Order establish just cause for the relief granted herein, the Court hereby makes the following findings of fact and conclusions of law and issues this confirmation order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

IT IS HEREBY FOUND AND DETERMINED:

      A.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

      B.    Transmittal and Mailing of Materials; Notice. The Solicitation Materials were transmitted and served upon all interested parties in compliance with the Approval Order and in compliance with the Bankruptcy Rules, and such transmittal and service was adequate and sufficient. Notice of the Confirmation Hearing and all deadlines in the Approval Order was given in compliance with the Bankruptcy Rules and the Approval Order and was good and

---

[2]  This confirmation order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Fed. R. Bankr. P. 9014 and 7052. Notwithstanding any designation to the contrary, findings of fact will constitute findings of fact even if stated as conclusions of law, and vice versa.

sufficient notice in accordance with Bankruptcy Rules 2002(b) and 3020(b)(2), and no other or further notice is required.  Votes for acceptance or rejection of the Plan were solicited in good faith, after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017 and 3018.

   **C.**  <u>Plan Modification</u>.  On December 4, 2009, the Debtors filed the Plan Supplement, which was served on December 5, 2009, on the master service list.  The Plan Supplement does not materially or adversely affect or change the treatment of any Holders of Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Supplement does not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor does the Plan Supplement require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Disclosure of the Plan Supplement in the filing and service on December 5, 2009, and on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases.

   **D.**  <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Cases (including the docket in each adversary proceeding in the jointly administered Chapter 11 Cases) maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.      Burden of Proof.  As described herein, the Debtors have met their burden

of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance

of the evidence.

F.      Substantive Consolidation.  The substantive consolidation of the Estates of

the Bayou Hedge Funds and the Bayou Non-Fund Debtors is just and proper under the Second

Circuit Augie/Restivo test.  See Union Sav. Bank v. Augie/Restivo Baking Co. (In re

Augie/Restivo Baking Co.), 860 F.2d 515 (2d Cir. 1988).

(i)      Substantive Consolidation of the Bayou Hedge Funds.  The Bayou

Hedge Funds are interrelated entities that were jointly operated by common principals in

furtherance of a fraudulent scheme that pervaded each of the Bayou Hedge Funds.  While

investors in the Bayou Hedge Funds may have thought the Funds were separate entities, their

claims against the Funds derive from the subsequently discovered reality of the common,

pervasive fraudulent scheme.  The Bayou Hedge Funds operated as a single integrated economic

unit to support that scheme, with their cash being commingled to conceal and further the fraud.

See Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC),

396 B.R. 810, 828-31 (Bankr. S.D.N.Y. 2008) (hereinafter, "Bayou SJ") (noting the failure "to

invest investors' funds as promised," and that the fraud was designed to induce new investments

and lull existing investors into retaining their investments and, further, that, "as a consequence of

the pervasive fraud described in the guilty pleas and allocutions of the Bayou principals, all

investors in the Bayou funds have or had tort claims for rescission of the entire amount actually

invested in the funds, although not including fictitious profits reported in the fraudulent financial

statements").  Based on the forensic accounting analysis submitted by the Debtors in connection

with the Adversary Proceedings and the testimony of the Debtors' accounting expert, William J.

Lenhart, it is clear that cash invested in the Bayou Hedge Funds was commingled, transferred,

and used without regard to the specific Fund in which investors had invested, including, for

example, in the Postbank transaction, which resulted in the commingling and fraudulent transfer

of substantially all of the assets of the Bayou Hedge Funds with the exception of litigation

claims.  New investments were used, moreover, to pay redemptions to old investors, regardless

of the entity in which either investor invested, in furtherance of the fraud.   The commingling of

assets enabled the Bayou Hedge Funds to prolong the fraudulent scheme and further injure the

investors.  The pervasiveness of the fraudulent scheme is recognized by the United States'

allocation of the investor/victim fund, derived from the partial recovery of the Postbank

transaction, on a pro rata basis among investor/victims of the Bayou Hedge Funds.  It is also

potentially impossible and clearly cost-prohibitive to require the Debtors to untangle the

financial affairs of any one of the Bayou Hedge Funds from the others.  See generally Bayou SJ,

396 B.R. at 834.  Because the Class 3 Claims derive from the common fraud conducted all of the

Bayou Hedge Funds, the benefits of such an exercise, moreover, would be dramatically

outweighed by its cost.  Further, given that the postpetition investigation, discovery and litigation

of preference and fraudulent transfer claims was conducted largely on a consolidated basis, it is

potentially impossible and clearly cost-prohibitive (compared to any harm to any Class 3 creditor

that might be ameliorated by such an approach) to allocate the Administrative Expense Claims

other than on the substantive consolidation basis proposed by the Plan.  Finally, the unanimous

vote of Class 3 creditors, comprising investors in each of the Bayou Hedge Funds, in favor of the

Plan strongly supports the fairness of the Plan's proposed substantive consolidation.  See In re

Standard Brands Paint Co., 154 B.R. 563, 573 (Bankr. C.D. Cal. 1993).  See generally Sampsell
v. Imperial Paper & Color Corp., 313 U.S. 215 (1941); In re Bonham, 229 F.3d 750 (9th Cir.
2000) (applying Augie/Resitivo test to affirm substantive consolidation of Ponzi scheme
debtors).

          (ii)    Substantive Consolidation of the Bayou Non-Fund Debtors.  There
is no harm in consolidating Bayou Advisors, Bayou Group and Bayou Equities with Bayou
Management because the Debtors are not aware of any assets belonging to Bayou Advisors,
Bayou Group or Bayou Equities.  There has been no objection to such substantive consolidation,
and the Plan was unanimously accepted by the voting holders of Class 3 Claims who would be
affected by such substantive consolidation.

          (iii)    No Complete Substantive Consolidation.  Bayou Management was
wholly owned by Samuel Israel, and thus investors did not invest with Bayou Management.  See
Bayou SJ, 396 B.R. at 821.  As the management company for the Bayou Hedge Funds, Bayou
Management is subject to distinct claims that should not dilute the distributions to be made to the
investors in the Bayou Hedge Funds.  As evidenced by the Disclosure Statement, the claims
asserted against the consolidated Bayou Management estate exceed the claims asserted against
the Bayou Hedge Funds by approximately $40 million. The consolidation of Bayou Management
with the Bayou Hedge Funds would, therefore, significantly prejudice the Bayou Hedge Funds'
creditors.  On the other hand, no creditor of Bayou Management has objected to the Plan on the
basis that the Plan does not consolidate Bayou Management and the other Bayou Non-Fund
Debtors with the Bayou Hedge Funds, and the Plan has been unanimously accepted by the
holders of Class 2 and Class 3 Claims against the Bayou Non-Fund Debtors who voted on the

Plan, which strongly supports the Plan's proposed form of substantive consolidation.  See In re Standard Brands Paint Co., 154 B.R. at 573.

        G.      Impaired Classes Voting to Accept the Plan.  As evidenced by the Voting Certification, which certified both the method and results of the voting, each of Class 2 of the Bayou Non-Fund Debtors, Class 3 of the Bayou Hedge Funds and Class 3 of the Bayou Non-Fund Debtors is impaired and has voted to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code.  Thus, at least one impaired class of Claims has voted to accept the Plan in respect of each consolidated Debtor group.

        H.      Classes Deemed to Accept the Plan.  Class 1 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors is not impaired under the Plan and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

        I.      Classes Voting or Deemed to Reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 4 Equity Interests in each of the Bayou Hedge Funds and Bayou Non-Fund Debtors are deemed to have rejected the Plan, because such holders are not entitled to receive or retain any Distribution or property under the Plan on account of such Interests.  No holder of Class 2 Claims against the Bayou Hedge Funds has voted to accept or to reject the Plan; for purposes of this Order only, and with no precedential effect, the Court treats this "empty" class as having rejected the Plan (Bayou Hedge Funds Class 2 together with Bayou Hedge Funds Class 4 and Bayou Non-Fund Debtors Class 4, the "**Rejecting Classes**").

        J.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  For the reasons stated below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates separate Classes of Claims and Interests for each of the two substantively consolidated Debtors.  Subject to and in the light of paragraph 4 of this Order, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  As stated above, substantive consolidation of the Bayou Hedge Funds is appropriate under section 1123(a)(5)(C) of the Bankruptcy Code because the Bayou Hedge Funds were operated as a single, unified fraudulent scheme and all creditors will benefit from such substantive consolidation.  Substantive consolidation of the Bayou Non-Fund Debtors is likewise appropriate for the efficient administration of the Debtors' estates.  However, the substantive consolidation of the Bayou Non-Fund Debtors and the Bayou Hedge Funds together would unduly prejudice the Investor Creditors and accordingly is not justified.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and IV of the Plan specify that Class 1 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors are unimpaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)      Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and IV of the Plan designate the following classes as impaired under the

- 11 -

Plan — Classes 2, 3 and 4 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors —
and specify the treatment of Claims and Interests in those Classes, thereby satisfying section
1123(a)(3) of the Bankruptcy Code.

      (iv)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides
for the same treatment by the Debtors for each Claim or Interest in each respective Class unless
the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim
or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

      (v)    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  Article VI of the
Plan, entitled "Means for Implementation and Execution of the Plan," sets forth numerous
provisions to facilitate implementation of the Plan, including, but not limited to, (i) the
substantive consolidation of the Bayou Hedge Funds and the Bayou Non-Fund Debtors, (ii) the
creation and governance of the Litigation Trusts and appointment of the Litigation Trustee, (iii)
the distribution of Litigation Trust Assets to creditors, (iv) the cancellation of existing securities
and agreements, (v) the post-confirmation dissolution of the Bayou Hedge Funds and Bayou
Non-Fund Debtors, and (vi) the establishment of the Post-Effective Date Committee for the
purpose, among others, of litigating the Committee-Controlled Causes of Action.  The Plan
provides adequate and proper means for its implementation, thereby satisfying section 1123(a)(5)
of the Bankruptcy Code.

      (vi)    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Section
6.4 of the Plan provides that, on the Effective Date, any and all agreements or other documents
evidencing the Claims or rights of any holder of a Claim against the Debtors (including all
Investor Creditors), any Equity Interest, and any options or warrants to purchase Equity Interests,

or obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled. The remaining assets of the Debtors will be held by the Litigation Trusts. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable.

(vii)    Selection of Officers, Directors and the Trustee (11 U.S.C. § 1123(a)(7)). Pursuant to Section 6.2(d) of the Plan, the Sole Managing Member, Jeff J. Marwil, not individually, but solely as a fiduciary for the respective Litigation Trusts, shall be the Litigation Trustee for each of the Litigation Trusts. The selection of the Sole Managing Member as Litigation Trustee satisfies section 1123(a)(7) of the Bankruptcy Code because the District Court appointed the Sole Managing Member both as a "federal equity receiver" and "the sole and exclusive managing member" of each of the Debtors. In his capacity as Sole Managing Member, Mr. Marwil has acted in a fiduciary capacity throughout these cases, and has led efforts to maximize value to the Estates. Accordingly, he is the most appropriate party to supervise the Litigation Trusts and wind down the Debtors in accordance with the terms and conditions set forth in the Plan. Thus, the Plan is consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's permissive provisions are appropriate, authorized by section 1123(b) of the Bankruptcy Code, and not inconsistent with the applicable provisions of the Bankruptcy Code.

K.    Compliance with Bankruptcy Rule 3016. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). The Plan describes in

specific and conspicuous language all acts to be enjoined under the Plan and identifies all entities that are subject to the injunctions set forth in Article X of the Plan in accordance with Bankruptcy Rule 3016(c).

        L.      <u>Compliance with Bankruptcy Rule 3018</u>.  The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Solicitation Materials, including the Plan, were transmitted to all creditors entitled to vote on the Plan (<u>i.e.</u>, holders of Impaired Claims, other than those in Classes deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, who received the Notice of Non-Voting Status), sufficient time was prescribed for such Creditors to accept or reject the Plan, and the Solicitation Materials and related solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

        M.      <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

        (i)      Each of the Debtors is a proper debtor under section 109 of the Bankruptcy Code.

        (ii)      The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

        (iii)      The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Approval Order in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating votes on the Plan.

N.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in

good faith, this Court has examined the totality of the circumstances surrounding the formulation

of the Plan.  The Plan provides for the liquidation and distribution of the Debtors' assets and the

wind-down of the Debtors' affairs and has been unanimously accepted by creditors voting on the

Plan and is supported by the Creditors Committee.

O.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Debtors or by a person issuing securities or acquiring

property under the Plan, for services or for costs and expenses in or in connection with the

Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been

approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section

1129(a)(4) of the Bankruptcy Code.

P.    <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The manner of

selection of the Litigation Trustee, who will be the sole officer and director or manager of the

Litigation Trusts, is appropriate.  This manner of selection satisfies section 1129(a)(5) of the

Bankruptcy Code because Jeff J. Marwil, the Litigation Trustee, was appointed by order of the

District Court as Sole Managing Member of the Debtors and has managed the Debtors' affairs

throughout these cases.  The Post-Effective Date Committee, which will have, <u>inter alia</u>, all

rights and powers of a committee appointed under section 1103 of the Bankruptcy Code and the

power and authority to prosecute and resolve the Committee-Controlled Causes of Action,

comprises those current members of the Creditors Committee so willing to serve.  The Post-

Effective Date Committee shall execute the Litigation Trust Agreements on or prior to the

Effective Date and will oversee the Litigation Trustees' management of the Litigation Trusts.

The appointment to, or continuance in, such offices of all such persons is consistent with the

interests of holders of Claims against the Debtors and with public policy.

        Q.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  There are no rate changes

provided for or contemplated in the Plan, and there is no governmental regulatory commission

with jurisdiction, after confirmation of the Plan, over any rates of the Debtors.  Thus, section

1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

        R.     <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The Plan is a liquidating

plan, providing for distribution in accordance with the priority scheme established in the

Bankruptcy Code.  Therefore, each holder of an impaired claim or interest either has accepted

the Plan or will receive on account of its claim or interest value that is not less than would have

been received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

        S.     <u>Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.

Class 1 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors is Unimpaired by the

Plan and, thus, is conclusively presumed to have accepted the Plan under section 1126(f) of the

Bankruptcy Code.  Class 3 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors has

voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.  As

set forth above, Class 4 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors was

deemed to reject the Plan and, therefore, the Debtors were not required to solicit votes to accept

or reject the Plan from holders of Claims or Interests in such Classes.  Class 2 is an Impaired

Class but has not voted either to accept or to reject the Plan.  Although section 1129(a)(8) has not

been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes. The Voting Certification sets forth the percentages of Holders of Claims in Classes entitled to vote that voted to accept the Plan.

      T.      <u>Treatment of Administrative, Priority and Tax Claims (11 U.S.C. §</u> <u>1129(a)(9))</u>. The treatment of Administrative Expense Claims, Priority Tax Claims and Non-Tax Priority Claims pursuant to Sections 2.1, 2.2, and 2.3 of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

      U.      <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Class 3 of each of the Bayou Hedge Funds and Bayou Non-Fund Debtors is an Impaired Class of Claims that has voted to accept the Plan with respect to all of the Debtors, and, to the Debtors' knowledge, does not contain insiders whose votes have been counted. Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class of Claims against or Interests in the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

      V.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan provides for the liquidation of the Debtors' remaining assets and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. The Plan also provides for the payment in full of all Allowed Administrative Expense Claims. Therefore, the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

      W.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees and other amounts payable under section 1930 of title 28, United States Code, as determined by this Court, have

been paid or will be paid on the Effective Date pursuant to Section 12.8 of the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

   X. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. As the Debtors are not aware of any obligation of the Debtors to provide retiree benefits to former employees of the Debtors, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

   Y. <u>Transfer of Property (11 U.S.C. § 1129(a)(16))</u>. Because no transfer of property under the Plan is being made by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

   Z. <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Holders of Claims and Interests in the Rejecting Classes are Impaired and deemed to have rejected the Plan. Section 1129(b)(2)(B)(ii) is satisfied with respect of Classes 2 and 4 because as to either Classes no junior Class is receiving distributions prior to the payment in full of these Classes.

   AA. <u>Binding on Rejecting Classes</u>. Accordingly, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

   BB. <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933, and no governmental unit has objected to the Confirmation of the Plan on any such

grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      CC.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Debtors have solicited votes for the Plan in good faith and in compliance with the provisions of the Bankruptcy Code. Based on the record before the Court in these Chapter 11 Cases, the Debtors and each of their respective directors, officers, employees, shareholders, members, agents, advisors, accountants, investment bankers, consultants, attorneys, and other representatives have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and injunctive provisions set forth in Article X of the Plan.

      DD.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and the conditions to confirmation set forth in Article IX of the Plan.

      EE.    <u>Retention of Jurisdiction</u>.  Subject to the provisions of this Order, the Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and/or section 1142 of the Bankruptcy Code.

      FF.    <u>Releases and Exculpation</u>.  Each of the release, indemnification, and exculpation provisions set forth in Section 12.5 of the Plan (i) falls within the jurisdiction of this

Court under 28 U.S.C. §§ 1334(a), (b) and (d), and (ii) is fair, reasonable, and appropriate under the circumstances of this case.

### DECREES

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

   1.  <u>Confirmation</u>.  The Plan, a copy of which is attached hereto as <u>Exhibit A</u>, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

   2.  <u>Objections</u>.  For the reasons set forth on the record of the Confirmation Hearing, (i) the Altegris Objection has been resolved as set forth in decretal paragraph 4 below, (ii) Freestone Low Volatility Partners, LP does not have standing to object to the Plan and (iii) the Freestone Objection is overruled on the merits pursuant to this Order.

   3.  <u>3018 Motion</u>.  The 3018 Motion is denied as moot, as Freestone's vote, even assuming its Claim were to be Allowed for voting purposes notwithstanding section 502(d) of the Bankruptcy Code, would have no effect on the acceptance or rejection of the Plan by any voting Class.

   4.  <u>Reserve for Claims of Altegris Investments Inc</u>.  The Debtors shall reserve an amount equal to $531,612.49 on account of the Class 3 Claims of Altegris Investments, Inc. Notwithstanding anything in the Plan to the contrary, all or any portion of Altegris Investment Inc.'s Claims may eventually be reclassified as Class 2 Claims by order of the Court or agreement among the parties.  Given the disclosure of this possibility in the Disclosure Statement, the foregoing resolution of the Altegris Objection is not a material modification of the Plan.

5.      Provisions of Plan and Order Non-Severable and Mutually Dependent.
The provisions of the Plan and this Confirmation Order, including the findings of fact and
conclusions of law set forth herein, are non-severable and mutually dependent.

6.      Plan Classification Controlling.  Except as specifically provided in
paragraph 4 hereof, the classifications of Claims and Interests for purposes of the Distributions to
be made under the Plan shall be governed solely by the terms of the Plan.

7.      Substantive Consolidation.  The Debtors' motion for substantive
consolidation of the Bayou Hedge Funds into Bayou Superfund and its Estate and the substantive
consolidation of the Bayou Non-Fund Debtors into Bayou Management and its Estate, contained
in Section 6.1(c) of the Plan, is hereby granted and such substantive consolidation is approved.

8.      Binding Effect.  The Plan, and all compromises and settlements
contemplated thereby or incorporated by reference therein, shall be binding upon and inure to the
benefit of the Debtors, all present and former Holders of Claims and Interests, and their
respective successors and assigns, including, but not limited to, the Litigation Trustee.  Pursuant
to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation
Order, the Plan, and all Plan-related documents shall apply and be enforceable notwithstanding
any otherwise applicable non-bankruptcy law.

9.      No Revesting of Assets (11 U.S.C. § 1141(b) and (c)).  All property and
assets of the respective Debtors and their Estates shall be transferred to and vest in the respective
Litigation Trusts in accordance with the Plan and shall not revest in the Debtors on or following
the Confirmation Date or Effective Date.  From and after the Effective Date, all such property

shall be distributed in accordance with the provisions of the Plan and this Confirmation Order without further order of the Court (except as specifically required).

10.     Litigation Trusts and Dissolution of Debtors.  On or prior to the Effective Date, the respective Litigation Trust Agreements shall be executed, and all other necessary steps shall be taken to establish the Litigation Trusts without any requirement of further action by the Sole Managing Member or any other governing body of the Debtors.  The Litigation Trusts shall be established for the sole purpose of liquidating and distributing their respective assets with no objective to continue or engage in the conduct of a trade or business.  Within thirty (30) days after the completion of any and all acts required by the Plan, or as soon thereafter as practicable, Bayou Superfund (into which the Bayou Hedge Funds have been substantively consolidated) and Bayou Management (into which the Bayou Non-Fund Debtors have been substantively consolidated) shall be deemed dissolved for all purposes without the necessity for any other or further action to be taken, except for the filing of a certificate of cancellation or dissolution, in accordance with Section 6.5(f) of the Plan.

11.     Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)) and Rejection Claims Bar Date.  In accordance with Section 8.1 of the Plan, on the Effective Date all executory contracts and unexpired leases of the Debtors shall be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those executory contracts and unexpired leases that (i) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (ii) previously shall have expired or terminated pursuant to their own terms before the Effective Date, or (iii) are the subject of a pending motion to assume or reject on the Confirmation Date.  Entry of this Confirmation Order

shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the
Bankruptcy Code.  **Any Claims based upon the foregoing rejection of an executory contract
or unexpired lease shall be filed, in a form substantially conforming with Official Form 10,
on or before 30 days after notice of such rejection at the address listed on such notice or, if
there is no independent notice of such rejection with the exception of the filing and mailing
of this Order, Dechert LLP, 1095 Avenue of the Americas, New York, New York  10036,
Attn: Shmuel Vasser, Esq.** or the claimant shall be forever barred from receiving a Distribution
or otherwise being treated as a creditor in these Chapter 11 Cases in respect of such Claim.

　　　　12.　　Effectuating Documents and Further Transactions.  Pursuant to the Plan,
the Sole Managing Member or the Litigation Trustee, as the case may be, shall be authorized to
execute, deliver, file, or record such documents, instruments, releases, and other agreements and
to take such actions as may be necessary or appropriate to effectuate and further evidence the
terms and conditions of the Plan.

　　　　13.　　Corporate Action.  Prior to, on, or after the Effective Date (as appropriate),
all matters expressly provided for under the Plan that would otherwise require approval of the
stockholders, members, directors or managers of one or more of the Debtors shall be deemed to
have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate)
pursuant to the applicable law of the states in which the Debtors are incorporated or formed
without any requirement of further action by the stockholders, members, directors or managers,
as applicable, of the Debtors.

　　　　14.　　Plan Documents.  There being no objections to any of the Plan Documents
contemplated by the Plan, and any amendments, modifications and supplements thereto, and all

documents and agreements introduced therein or contemplated by the Plan (including all exhibits

and attachments thereto and documents referred to therein), the execution, delivery and

performance thereof by the Debtors are authorized and approved without need for further

corporate action or further order or authorization of the Court.  The Debtors and the Liquidating

Trustee, as appropriate, are authorized and empowered to make any and all modifications to any

Exhibits that may be agreed to by the parties thereto and are not inconsistent with the Plan.

15.    Cancellation of Securities, Instruments, and Agreements Evidencing

Claims and Interests.  On the Effective Date and concurrently with the applicable Distributions

made pursuant to Article V of the Plan, the share certificates (including treasury stock),

promissory notes or other instruments evidencing any Claims or Interests, and all options,

warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to

acquire such Interests, shall be deemed canceled and of no further force and effect, without any

further act or action under any applicable agreement, law, regulation, order, or rule; and the

obligations of the Debtors under the notes, share certificates, and other agreements and

instruments governing such Claims and Interests shall be discharged.  The Holders of or parties

to such canceled notes, share certificates, and other agreements and instruments shall have no

rights arising from or relating to such notes, share certificates, and other agreements and

instruments, or the cancellation thereof, except the rights provided pursuant to the Plan.

16.    Exemption from Certain Taxes.  Pursuant to section 1146(a) of the

Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities under the

Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c)

the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or

other instrument of transfer, or in connection with, the Plan, any merger agreements; agreements

of consolidation, restructuring, disposition, liquidation or dissolution; deeds; bills of sale; and

transfers of tangible property, shall not be subject to any stamp tax, recording tax, transfer tax, or

other similar tax exempted under section 1146(a) of the Bankruptcy Code.

      17.    <u>Termination of Injunctions and Automatic Stay</u>.  Pursuant to Section 10.4

of the Plan, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or

362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall

remain in full force and effect until all of the property of the Litigation Trusts shall have been

fully administered and the Litigation Trustee discharged from his duties; *provided, however*, that

any injunction that by its terms is permanent or otherwise is intended to survive the Effective

Date and Distributions under the Plan (whether by law or pursuant to order of the Court), shall be

continued without modification, notwithstanding anything to the contrary contained in the Plan.

      18.    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, this

Confirmation Order, or a separate order of this Court, the injunctions set forth in Section 10.4 of

the Plan are approved.

      19.    <u>Settlements, Compromises and Releases</u>.  Pursuant to section

1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, discharges,

exculpations, and injunctions set forth in the Plan, including, but not limited to, the releases set

forth in Section 10.2 of the Plan and implemented by this Confirmation Order shall be, and

hereby are, approved as fair, equitable, reasonable and in the best interests of the Debtors and

their estates, creditors and interest holders.

20.     Litigation Trusts.  On the Effective Date or as soon thereafter as is practicable, the applicable Litigation Trust Assets shall be transferred to the respective Litigation Trusts for the Bayou Hedge Funds and the Bayou Non-Fund Debtors.  Upon transfer of the Litigation Trust Assets to the respective Litigation Trusts, except as otherwise provided in the Litigation Trust Agreements, the Debtors shall have no interest in or with respect to the Litigation Trust Assets or the Litigation Trusts; *provided, however,* that, notwithstanding such transfer to the Litigation Trusts, any claims belonging to any of the Debtors shall not be merged, but shall be deemed asserted on behalf of, each applicable Estate holding such claim immediately prior to contribution, and shall remain separate and distinct from other Estates in connection with the prosecution thereof.  In accordance with Section 6.2 of the Plan, Jeff J. Marwil is hereby appointed the Litigation Trustee as a representative of each of the Estates.  The Litigation Trust for the Bayou Hedge Funds shall be deemed the successor-in-interest to the Bayou Hedge Funds, and the Litigation Trust for the Bayou Non-Fund Debtors shall be deemed the successor-in-interest to the Bayou Non-Fund Debtors and their respective Estates.

21.     Post-Effective Date Committee.  As set forth more fully in the Plan, the Post-Effective Date Committee, which will have, inter alia, all rights and powers of a committee appointed under section 1103 of the Bankruptcy Code and the power and authority to prosecute and resolve the Committee-Controlled Causes of Action, and will be responsible for overseeing the Litigation Trustee's management of the Litigation Trusts, including, but not limited to, reviewing any proposed settlements and the fees and expenses of the Litigation Trusts, is comprised of those current members of the Creditors Committee willing to serve as such.  The appointment of the Post-Effective Date Committee is hereby approved.

22.     Non-Occurrence of Effective Date.  If the Effective Date has not occurred within the time provided in Section 9.4 of the Plan, the Debtors may seek an order from the Court directing that this Confirmation Order be vacated and that the Plan be declared null and void in all respects.

23.     Authorization to Consummate Plan.  Notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and the Debtors are authorized to consummate the Plan immediately after entry of this Confirmation Order in accordance with Section 9.2 of the Plan.

24.     Administrative Expense Claims Bar Date.  **Any requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on counsel for the Debtors and the Creditors Committee, with a copy to chambers, so as to actually be received on or before 4:00 p.m. (prevailing Eastern Time) on January 25, 2010 (the "Administrative Expense Claims Bar Date").**  Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claims Bar Date shall be disallowed automatically without the need for any objection from the Debtors or the Litigation Trustees or any order of the Court.  Any requests for payment of an Administrative Expense Claim should include, at a minimum, (i) the name(s) of the Debtor(s) that are purported to be liable for the Administrative Expense Claim, (ii) the name of the holder of the Administrative Expense Claim, (iii) the amount of the Administrative Expense Claim, (iv) the legal basis of the Administrative Expense Claim and (v) supporting documentation for the Administrative Expense Claim.  The Court will hold hearing on all timely-

filed requests for payment of Administrative Expense Claims on February 8, 2010, at 10:00 a.m. (prevailing Eastern time) or such later time as counsel may be heard.

25.     <u>Notice of Entry of Confirmation Order, Administrative Expense Claims Bar Date and the Effective Date</u>.  (a) Within five (5) Business Days after the entry of this Order, the Debtors shall serve a notice (the **"Confirmation and Administrative Expense Claims Bar Date Notice"**) in substantially the form attached hereto as <u>Exhibit B</u> (the form of which is hereby approved) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all parties that received notice of the Confirmation Hearing; *provided, however*, that the Debtors shall be obligated to serve the Confirmation Notice only on the record holders of Claims or Interests as of the Confirmation Date.  (b) Within five (5) Business Days after the Effective Date, the Debtors shall file with the Court a notice of occurrence of the Effective Date.

26.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XI of the Plan.

27.     <u>References to Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

28.    <u>Confirmation Order Controlling</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in the Confirmation Order shall govern.

29.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

Dated: White Plains, New York
       December 23, 2009

/s/ Robert D. Drain_____
UNITED STATES BANKRUPTCY JUDGE

- 29 -

**<u>EXHIBIT A</u>**

**<u>EXHIBIT B</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
In re:                                                      :      Chapter 11
                                                            :
BAYOU GROUP, LLC, et al.,                                   :      Case No.: 06-22306 (RDD)
                                                            :
                          Debtors.                          :      Jointly Administered
------------------------------------------------------------ X

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING
## DEBTORS' SECOND AMENDED JOINT PLAN
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
## AND (II) ADMINISTRATIVE EXPENSE CLAIMS BAR DATE

**TO ALL CREDITORS, EQUITY HOLDERS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT:**

**I.      Confirmation of Plan**

On December __, 2009 (the "Confirmation Date"), the United States Bankruptcy Court for the
Southern District of New York (the "Bankruptcy Court") entered an order (the "Confirmation
Order") confirming the Debtors' Second Amended Joint Plan Under Chapter 11 of the Bankruptcy
Code (the "Plan"). Unless otherwise defined, capitalized terms used in this Notice shall have the
meanings ascribed to them in the Plan.

Pursuant to section 1141(a) of title 11 of the United States Code, the provisions of the Plan
(including the exhibits to, and all documents and agreement executed pursuant to, the Plan) and the
Confirmation Order shall be binding on (i) the Debtors, (ii) the Litigation Trustee and the Litigation
Trusts, (iii) all holders of Claims against and Equity Interests in any of the Debtors, whether or not
impaired under the Plan and whether or not, if impaired, such holders accepted, rejected, or are
deemed to have accepted or rejected the Plan, (iv) each person or entity acquiring property under the
Plan, (v) all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors,
(vi) all entities that are parties to or are subject to the settlements, compromises, releases, discharges
and injunctions described in the Plan or the Confirmation Order and (vii) each of the foregoing's
respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors,
agents, representatives, attorneys, beneficiaries or guardians, if any.

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the
Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in
any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (i)
commencing or continuing in any manner any action or other proceeding of any kind with respect to
any such Claim or Equity Interest, (ii) the enforcement, attachment, collection or recovery by any
manner or means of any judgment, award, decree or order against the Debtors on account of any such
Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against
the Debtors or against the property or interest in property of the Debtors on account of any such

Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest and (v) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action which are retained pursuant to the Plan.

Any party in interest wishing to obtain a copy of the Plan or the Confirmation Order may request such copies by contacting the Balloting Agent, The Garden City Group, Inc. P.O. Box 9000 #6510 Merrick, NY 11566-9000, Telephone: (631) 470-5000, or by downloading such copies from the Bankruptcy Court's website at http://www.deb.uscourts.gov or from the Balloting Agent's website at http://www.bayoubankruptcy.com.

## II.     Administrative Expense Claims Bar Date

Any requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court (300 Quarropas Street, White Plains, NY 10601-4140), and served on counsel for the Debtors (Dechert, LLP, 1095 Avenue of the Americas, New York, NY 10036, Attn.: Shmuel Vasser) and the Creditiors Committee (Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attn.: Joseph A. Gershman and K & L Gates LLP, 1601 K Street NW, Washington, DC 20006-1600, Attn: Richard A. Kirby), with a copy to the Bankruptcy Judge's chambers, **so as to actually be received on or before 4:00 p.m. (prevailing Eastern Time) on January 25, 2010 (the "Administrative Expense Claims Bar Date"). Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claims Bar Date shall be disallowed automatically without the need for any objection from the Debtors or the Litigation Trustees or any order of the Bankruptcy Court.** Any requests for payment of an Administrative Expense Claim should include, at a minimum, (i) the name(s) of the Debtor(s) that are purported to be liable for the Administrative Expense Claim, (ii) the name of the holder of the Administrative Expense Claim, (iii) the amount of the Administrative Expense Claim, (iv) the legal basis of the Administrative Expense Claim and (v) supporting documentation for the Administrative Expense Claim. **A hearing on all timely filed requests for payment of Administrative Expense Claims shall be held on February 8, 2010, at 10:00 a.m. (prevailing Eastern time), before the Honorable Robert D. Drain in the United States Bankruptcy Court for the Southern District of New York, White Plains Division, 300 Quarropas Street, White Plains, NY 10601-4140.**

Dated:  December __, 2009                      By Order of the Honorable Robert D. Drain
New York, New York                             United States Bankruptcy Judge

      DECHERT LLP

      Shmuel Vasser
      Gary J. Mennitt
      Andrew L. Buck
      1095 Avenue of the Americas
      New York, New York  10036-6797
      Telephone:  (212) 698-3500
      Facsimile:  (212) 698-3599