UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
GOLDMAN SACHS EXECUTION & CLEARING,        :
L.P. (f/k/a SPEAR, LEEDS & KELLOGG,        :
L.P.),                                     :
                                           :
                    Petitioner,            :        10 Civ. 5622 (JSR)
                                           :
          -v-                              :
                                           :
THE OFFICIAL UNSECURED CREDITORS'          :        OPINION AND ORDER
COMMITTEE OF BAYOU GROUP, LLC, et          :
al., on behalf of BAYOU GROUP, LLC,        :
BAYOU MANAGEMENT, LLC, BAYOU               :
ADVISORS, LLC, BAYOU EQUITIES, LLC,        :
BAYOU FUND, LLC, BAYOU SUPERFUND,          :
LLC, BAYOU NO LEVERAGE FUND, LLC,          :
BAYOU AFFILIATES FUND, LLC, and BAYOU      :
ACCREDITED FUND, LLC,                      :
                                           :
                    Respondent.            :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

          Although arbitration is touted as a quick and cheap

alternative to litigation, experience suggests that it can be slow and

expensive.  But it does have these "advantages": unlike courts,

arbitrators do not have to give reasons for their decisions, and their

decisions are essentially unappealable.  Here, petitioner Goldman

Sachs Execution & Clearing, L.P. ("Goldman Sachs"), having voluntarily

chosen to avail itself of this wondrous alternative to the rule of

reason, must suffer the consequences.

          Goldman Sachs brings this petition to vacate the

$20,580,514.52 arbitration award granted in favor of respondent The

Official Unsecured Creditors' Committee on Behalf of Bayou Group, LLC

(the "Creditors' Committee") in the matter of <u>The Official Unsecured</u>
<u>Creditors' Committee of Bayou Group, LLC, et al. against Goldman Sachs</u>
<u>Execution & Clearing, L.P. and Spear, Leeds & Kellogg, L.P.</u>, FINRA
Dispute Resolution Arbitration No. 08-01763 (June 22, 2010).  The
Creditors' Committee cross-petitions to confirm the award.  Although
the arbitration panel did not articulate its reasoning -- nor was it
required to do so -- petitioner argues that in rendering the award,
the panel "manifestly disregarded the law" and exceeded its authority
under the Federal Arbitration Act.  By Order dated November 8, 2010,
the Court denied the petition.  This Opinion and Order states the
reasons for the Court's ruling -- because, a court, unlike an
arbitrator, must state its reasons and subject them to appellate
scrutiny.

    The Federal Arbitration Act provides that a district court may
vacate an arbitration award "(1) where the award was procured by
corruption, fraud, or undue means; (2) where there was evident
partiality or corruption in the arbitrators . . . ; (3) where the
arbitrators were guilty of misconduct . . . ; or (4) where the
arbitrators exceeded their powers, or so imperfectly executed them
that a mutual, final, and definite award upon the subject matter was
not made."  9 U.S.C. § 10(a).  Although the statute makes no mention
of "manifest disregard of the law" as a basis for vacatur, some courts
previously construed the fourth ground as a warrant for vacating

awards on the basis of such disregard.  Other courts, concerned that
arbitration would otherwise be entirely untethered to the rule of law,
simply concluded, by way of judicial legislation, that "manifest
disregard" constituted an independent, fifth ground for vacatur.
Subsequently, however, the Supreme Court made "clear" that such
approaches were either eliminated by the Court's decision in <u>Hall
Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 586 (2008) --
or not.  As the Court so helpfully stated last term in <u>Stolt-Nielsen
S.A. v. Animalfeeds Int'l Corp.</u>, 130 S. Ct. 1758, 1768 n.3 (2010),
"[w]e do not decide whether 'manifest disregard' survives our decision
in <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 585,
128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), as an independent ground
for review or as a judicial gloss on the enumerated grounds for
vacatur set forth at 9 U.S.C. § 10."  Nonetheless, the Second Circuit,
divining clarity where others see only confusion, "concluded that
manifest disregard 'remains a valid ground for vacating arbitration
awards.'"  <u>T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.</u>, 592 F.3d
329, 340 (2d Cir. 2010) (quoting  <u>Stolt-Nielsen SA v. AnimalFeeds
Int'l Corp.</u>, 548 F.3d 85, 94 (2d Cir. 2008)).

As a practical matter, the putative survival of the manifest
disregard standard will be of little solace to those parties who,
having willingly chosen to submit to inarticulated arbitration, are
mystified by the result; for a party seeking vacatur on the basis of
manifest disregard of the law "must clear a high hurdle,"

Stolt-Nielsen, 130 S. Ct. at 1767.  Indeed, vacatur on this basis can
succeed only in "those exceedingly rare instances where some egregious
impropriety on the part of the arbitrators is apparent."  Duferco
Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389
(2d Cir. 2003).  Conversely, the award must be enforced "if there is a
barely colorable justification for the outcome reached."  Wallace v.
Buttar, 378 F.3d 182, 190 (2d Cir. 2005) (quotation mark and citation
omitted).  Moreover, the facts of record must be construed most
favorably to the prevailing party and the arbitration panel's implicit
factual findings are not subject to any review whatsoever.  Id. at
193.

          In determining whether a petitioner has carried this
exceedingly heavy burden for invoking the doctrine of manifest
disregard, the Second Circuit has recognized three factors a district
court must consider.  First, the court must determine "whether the law
that was allegedly ignored was clear, and in fact explicitly
applicable to the matter before the arbitrators."  Duferco, 333 F.3d
at 390.  Second, if the law is clear and plainly applicable, the court
must find that the law "was in fact improperly applied, leading to an
erroneous outcome."  Id.  Finally, the court must look to a
"subjective element, that is, the knowledge actually possessed by the
arbitrators. In order to intentionally disregard the law, the
arbitrator must have known of its existence, and its applicability to
the problem before him."  Id.  Thus, the award must be upheld unless

the arbitration panel intentionally and erroneously disregarded a clear and plainly applicable law.  This is to be determined, moreover, by reference to a record where the arbitration panel typically, as here, states neither its findings of fact nor its conclusions of law.

With these rigorous requirements in mind, the Court now turns to the particulars of this case.  The events precipitating the underlying dispute began in 1999, when the Bayou Group, LLC opened at Goldman Sachs the account of Bayou Fund, LLC, a hedge fund managed by Samuel Israel.  In 2003, Israel opened similar accounts at Goldman Sachs for four new hedge funds in the Bayou family - Bayou Superfund LLC, Bayou Accredited Fund LLC, Bayou Affiliates Fund LLC, and Bayou No Leverage Fund LLC (collectively, along with Bayou Fund, LLC, the "Bayou Funds").  All of these accounts were opened pursuant to Goldman Sach's standard account agreements.

On March 5, 2003 Israel directed Goldman Sachs to internally transfer through journal entries a total of $13,866,70.78 from the Bayou Fund, LLC margin account to the margin accounts of the four new hedge funds.  A second group of transfers occurred between June 2004 and the filing of Bayou's bankruptcy petition in May, 2006, and consisted of deposits of $6,693,754 from an outside entity, Bayou Group, into the Bayou Funds' margin accounts at Goldman Sachs.

Israel closed the hedge funds in August 2005, and soon afterwards it was discovered that he had been fraudulently concealing trading losses from the hedge funds' investors and operating a Ponzi

scheme.  Israel and two other executives subsequently pled guilty to
criminal charges and are now incarcerated.  The funds were placed into
receivership, and on May 30, 2006, the Bayou Funds filed voluntary
petitions for relief in the Southern District of New York under
Chapter 11 of the United States Bankruptcy Code.  On June 15, 2006,
the Creditors' Committee was appointed to represent the interests of
the funds' unsecured creditors, and on May 29, 2008 the Bankruptcy
Court granted the Creditors' Committee's motion to commence an
adversary proceeding against Goldman Sachs in the Bankruptcy Court,
alleging that the aforementioned transfers served to defraud Bayou's
creditors and that Goldman Sachs, because of its failure to diligently
investigate the funds, was jointly and severally liable, along with
the Bayou Funds, for fraudulent transfers and fraudulent conveyances.
Pursuant to the terms of the Goldman Sachs' agreements governing the
Bayou Funds' accounts, the adversary proceeding was then stayed, on
consent, in favor of the FINRA arbitration.

On June 27, 2010, the arbitration panel -- consisting of three
very experienced arbitrators -- awarded the Creditors' Committee the
full $20,580,514.52 it sought from Goldman Sachs, comprising the total
of all the aforementioned transfers.  Although, as noted, the panel
gave no reasons for its decision, nonetheless, based on the record
before the panel, it may be inferred that the panel found that: (1)
the March 5, 2003 transfers of $13,886,760.78 from the Bayou Fund, LLC
account at Goldman Sachs to the four new hedge fund accounts at

Goldman Sachs constituted fraudulent conveyances under New York law; and (2) that the nineteen deposits totaling $6,693,754 from Bayou Group, LLC into the Bayou Funds' accounts at Goldman Sachs between June 2004 and May 2005 were fraudulent transfers under federal bankruptcy law.

With respect to the first group of transfers, Goldman Sachs maintains that the law is clear that fraudulent conveyance claims under New York Debtor Creditor Law §§ 273-76 cannot be based on movements of money between "ostensibly separate entities that in actuality are one and the same[,] because such movements effect no conveyances at all." Goldman Sachs Petition at 18. Thus, it argues, the transfers of almost $13.9 million made among the various Bayou Funds accounts at Goldman Sachs cannot be considered fraudulent conveyances.

However, the two cases Goldman Sachs cites in support of this theory are hardly dispositive. See B.W. Dyer & Co. v. Monitz, Wallack & Colodney, 16 Misc. 2d 1033, 1041-42 (N.Y. Sup. Ct. 1959), aff'd in part, modified in part on other grounds, 12 A.D.2d 594 (N.Y. App. Div. 1960), aff'd, 11 N.Y.2d 654 (1962); Feltman v. Gulf Bank (In re Sophisticated Communications, Inc.), No. 00-17635-BKC-RAM, Slip Op. at 6 (Bankr. S.D. Fla. Oct. 1, 2003). Dyer was expressly limited to the facts of that case and has not been cited with approval by any other court. Feltman, a case from the Bankruptcy Court of the Southern

7

District of Florida, is not controlling authority here.[1]  Moreover,
both cases involved situations where corporate formalities were not
observed, so that the various entities involved could reasonably be
viewed as one.  Here, by contrast, petitioner's argument merely begs a
factual question submitted to the arbitrators for determination: <u>viz.</u>,
whether the Bayou Funds are in actuality one and the same entity.  <u>See</u>
Creditors' Committee Petition at 8.  Given the fact that Goldman Sachs
itself required that each Bayou fund be legally separate and adhere to
all corporate formalities, the panel could certainly find that each of
the Bayou funds was a legally separate entity, in which event the
cases cited by Goldman Sachs would be irrelevant.  Thus, Goldman
Sachs's suggestion that the decision of the arbitration panel with
respect to the first set of transfers was in manifest disregard of the
law is, in reality, a quarrel with the arbitration panel's likely
factual finding, from which no appeal may be taken.

     With respect to the second set of transfers, the arbitration
panel seemingly concluded that Goldman Sachs, as an "initial
transferee" of the fraudulently-obtained funds that Bayou Group
transferred into the Goldman Sachs accounts between June 2004 and May
2005, was liable to the defrauded creditors because Goldman Sachs did
not diligently investigate Bayou's fraudulent practices.  Goldman
Sachs, however, argues that the arbitration panel manifestly
disregarded "universal" case law under the Bankruptcy Code that a

---

[1] New York law governs the state law claims here at issue.

clearing and execution firm in the position that Goldman Sachs held in relation to Bayou can be liable as an "initial transferee" only if it acquired "dominion and control" over the transferred assets at the time of transfer.  See Goldman Sachs Petition at 10 (citing 11 U.S.C. §§ 544, 550(a)).  In support of this proposition, Goldman Sachs points to what it characterizes as an unbroken line of precedent beginning with Bonded Financial Services v. European American Bank, 838 F.2d 890 (7th Cir. 1988), and including Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52 (2d Cir. 1997); Nordberg v. Societe Generale (In re Chase & Sandborn Corp.), 848 F.2d 1196 (11th Cir. 1988); and Kaiser Steel Res., Inc. v. Jacobs (In re Kaiser Steel Corp.), 110 B.R. 514 (D. Colo. 1990), aff'd on other grounds, 913 F.2d 846 (10th Cir. 1990).  Under petitioner's reading of these cases, Goldman Sachs is a "mere conduit" that cannot be held liable as an initial transferee.

But the most recent case on point in this District,[2] Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund, Ltd.), 397 B.R. 1 (S.D.N.Y. 2007), cuts in favor of the Creditors' Committee and against Goldman Sachs.  In Gredd, as here, the debtor was a hedge fund involved in a Ponzi scheme that deposited monies into

---

[2] The FINRA arbitration panel, sitting in Manhattan, necessarily applied the law of the Southern District of New York to the bankruptcy claims that were filed in the Bankruptcy Court for the Southern District of New York.

a margin account at Bear, Stearns Securities Corp. ("Bear Stearns").
Helen Gredd, the bankruptcy trustee for the hedge fund, sought to
recover from Bear Stearns the amount of the transfers into the margin
account, on the ground that Bear Stearns had failed to diligently
investigate the fraudulent nature of the hedge fund and was therefore
liable as an "initial transferee" of fraudulently obtained funds.
Gredd at 14, 22-24.  The Bankruptcy Court agreed, id. at 14, and the
District Court, in a careful opinion by the Hon. Naomi Reice Buchwald,
affirmed this determination.  Among other things, Judge Buchwald
distinguished the only Second Circuit case on which Goldman Sachs here
relies, In re Finley, because, inter alia, "the degree of decision-
making control Bear Stearns possessed with respect to the funds
demonstrates a level of 'dominion and control' sufficient to create
transferee liability."  Id. at *21.

          In the instant case, the Creditors' Committee presented
the arbitration panel with considerable evidence that Goldman Sachs'
customer agreements with the Bayou Funds gave Goldman Sachs broad
discretion over use of the monies and securities held in the Bayou
Funds' accounts.  See, e.g., Creditors' Committee Statement of Claim
¶¶ 32-33.  Although Goldman Sachs argued to the contrary, a reasonable
arbitrator could well have found that such rights enjoyed by Goldman
Sachs with respect to the Bayou Funds' accounts gave it sufficient
dominion and control to create transferee liability.  Given such
putative findings, the arbitration panel could then rightly apply the

legal principles set forth in <u>Gredd</u> to impose transferee liability on
Goldman Sachs.  The suggestion that this somehow constitutes "manifest
disregard of the law" is therefore entirely misplaced, for, once
again, the heart of the decision is a factual finding.

Finally, Goldman Sachs argues that it is entitled to receive
credit for monies it effectively "returned" to the debtor.  It cites
three cases in support of its argument that fraudulent transfer
defendants receive credit for amounts they effectively return to the
debtor pre-petition.  <u>See</u> <u>Bakst v. Sawran (In re Sawran)</u>, 359 B.R.
348, 353, 354 (Bankr. S.D. Fla. 2007); <u>Bakst v. Wetzel</u> <u>(In re
Kingsley)</u>, Adv. No. 06-2109-BKC-PGH-A, 2007 WL 1491188, at *4-*5
(Bankr. S.D. Fla. May 17, 2007); <u>Dahar v. Jackson (In re Jackson)</u>, 318
B.R. 5, 27-28 (Bankr. D. N.H. 2004).

However, these cases are not controlling in this District and
are, in any case, distinguishable on the facts.  They all involve
transfers to a family member by an individual debtor who was rendered
insolvent by the transfers or was facing personal bankruptcy.
Moreover, in each case the transferees submitted an accounting to the
court demonstrating that the funds actually had been returned to the
debtor and that the transferee had not benefitted from the transfer.
Additionally, in <u>In re Sawran</u>, the court expressly found that "[i]n
holding that the Defendants are entitled to an equitable credit in the
amount of transfers made prepetition to the Debtor, the Court finds

11

that the Defendants are innocent of wrongdoing and deserve protection under these circumstances."   359 B.R. at 354.

In the instant case, the accounting is far more complex than in the cases Goldman Sachs cites.[3]   The arbitration panel did not "manifestly disregard the law" if, as is likely, it made a factual determination that Goldman Sachs had not proved the funds were returned on a dollar-for-dollar basis to the debtors.   Moreover, implicit in all the arbitration panel's determinations is the finding that Goldman Sachs, far from being totally innocent of wrongdoing, failed to engage in the diligent investigation that would have revealed Bayou's fraud.   This is especially relevant to application of the double recovery theory, which is based on principles of equity that a court (or in this case the arbitration panel) may apply (or not apply) with considerable discretion.

The Court has considered Goldman Sachs' other arguments and finds that none of them remotely suggests that the arbitration panel

---

[3] Goldman Sachs' "double-recovery" argument is based on the fact that after the Bayou Funds transferred $13.9 million to the four new Bayou Funds' separate accounts on March 5, 2003, the five Bayou Funds collectively withdrew $198 million from 2003 through 2005.  Also during the June 2004 through June 2005 period when the Bayou Funds deposited the $6.7 million, those same Bayou Funds withdrew more than $26 million.  While the Creditors' Committee concedes that this is true, it points out that the Bayou Funds also collectively received over $219 million in deposits, purchased over $15 billion worth of securities, and lost over $42 million trading during that time period.   The Creditors' Committee also notes that it is impossible to trace what was done with the deposits of $13.9 million and $6.7 million.   See Goldman Sachs Petition at 22-25; Creditors' Committee Petition at 30-33.

manifestly disregarded the law in granting the $$20,580,514.52 award
in favor of the Creditors' Committee.  Accordingly, the Clerk of the
Court is directed to enter final judgment dismissing Goldman Sachs'
petition to vacate the arbitration award and granting the Creditors'
Committee's cross-petition to confirm the award in its entirety.

     SO ORDERED.

                         _____
                         JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
       November 30, 2010